# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| SAM CARLISLE, | ) |
| | ) |
| Plaintiff, | ) Case No. _____ |
| | ) |
| vs. | ) |
| | ) **COMPLAINT FOR VIOLATIONS OF** |
| GREENSKY, INC., GERALD BENJAMIN, | ) **THE FEDERAL SECURITIES LAWS** |
| JOEL BABBIT, GREGG FREISHTAT, | ) |
| DAVID ZALIK, and ARTHUR BACCI, | ) |
| | ) JURY TRIAL DEMANDED |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

Plaintiff Sam Carlisle ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.    Plaintiff brings this action against GreenSky, Inc. ("GreenSky" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which The Goldman Sachs Group, Inc. ("GS Group") will acquire the Company through its subsidiaries Goldman Sachs Bank USA ("Bank"), Glacier Merger Sub 1, LLC ("Merger Sub 1") and Glacier Merger Sub 2, LLC ("Merger Sub 2")  (the "Proposed Transaction").[1]

---

[1] Non-party GS Group is a global financial institution that delivers a broad range of financial services across investment banking, securities, investment management and consumer banking to a large and diversified client base that includes corporations, financial institutions, governments and individuals. GS Group operates through four segments: Investment Banking, Global Markets, Asset Management,

2. On September 15, 2021, GreenSky and GS Group jointly announced their entry into an Agreement and Plan of Merger dated the preceding day (the "Merger Agreement"). That agreement provides GreenSky stockholders will receive 0.03 shares of GS Group common stock for each share of Company common stock they own (the "Merger Consideration").[2]

3. On November 9, 2021, GreenSky filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that GreenSky stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section

---

and Consumer & Wealth Management. Non-party GS Bank is a New York State-chartered bank and the U.S. depository institution subsidiary of GS Group. Non-party Merger Sub 1 is a Delaware limited liability company and wholly owned subsidiary of GS Bank. Non-party Merger Sub 2 is a Georgia limited liability company and wholly owned subsidiary of GS Bank.

[2] The approximate value of the Proposed Transaction is $2.24 billion

27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.    The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.    Plaintiff is, and has been at all times relevant hereto, a stockholder of GreenSky.

10.   Defendant GreenSky is a Delaware corporation with principal executive offices at 5565 Glenridge Connector, Suite 700, Atlanta, Georgia 30342.  GreenSky's common stock trades on the Nasdaq Global Select Market under the ticker symbol "GSKY."

11.   Defendant Gerald Benjamin ("Benjamin") is and has been Chief Administrative Officer of the Company since February 2018, and Vice Chairman of the Board and a director since 2014.

12.   Defendant Joel Babbit ("Babbit") is and has been a director of the Company since 2015.

13.   Defendant Gregg Freishtat ("Freishtat") is and has been a director of the Company since 2014.

14.   Defendant David Zalik ("Zalik") is and has been Chief Executive Officer ("CEO") of the Company since co-founding GreenSky in 2006, and a director since 2014.

15.   Defendant Arthur Bacci ("Bacci") is and has been a director of the Company since April 2019.

16. Defendants identified in paragraphs 11-15 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

17. On September 15, 2021, GreenSky and GS Group jointly announced in relevant part:

NEW YORK and ATLANTA, September 15, 2021 – The Goldman Sachs Group, Inc. ("Goldman Sachs") and GreenSky, Inc. ("GreenSky"; NASDAQ: GSKY) today announced that they have entered into a definitive agreement pursuant to which Goldman Sachs will acquire GreenSky, the largest fintech platform for home improvement consumer loan originations, in an all-stock transaction valued at approximately $2.24 billion. GreenSky's differentiated lending capabilities and market-leading merchant and consumer ecosystem will help accelerate the efforts of Goldman Sachs to create the consumer banking platform of the future, help tens of millions of customers take control of their financial lives and drive higher, more durable returns.

The acquisition will enhance Goldman Sachs' ability to provide consumers with the opportunity to save, spend, borrow and invest, and meet customers where they transact. Since its founding, GreenSky has provided simple and transparent home improvement financing solutions for approximately four million customers. GreenSky has a growing network of over 10,000 merchants and helps them accelerate their business by incorporating a seamless financing experience into their commerce flow. Aligning GreenSky's unique capabilities and growing user base with the expanding products of Marcus by Goldman Sachs creates a compelling banking platform positioned for significant growth.

"We have been clear in our aspiration for Marcus to become the consumer banking platform of the future, and the acquisition of GreenSky advances this goal," said David M. Solomon, Chairman and CEO of Goldman Sachs. "GreenSky and its talented team have built an impressive, cloud-native platform that will allow Marcus to reach a new and active set of merchants and customers and provide them with an expanding set of solutions. We welcome the GreenSky team to the Goldman Sachs family."

"The GreenSky team and I are thrilled to be joining Goldman Sachs," said David Zalik, Chief Executive Officer of GreenSky. "From GreenSky's inception, our mission has been to deliver exceptional value helping businesses grow and delight their customers. In combination with Goldman Sachs, we're excited to continue delivering innovative point-of-sale payment solutions for our merchant partners and their customers on an accelerated basis."

In just five years, the consumer business of Goldman Sachs has made significant progress toward its goal to provide an integrated and customer-centric digital offering that enables customers to take control of their financial lives. This transaction is

consistent with that vision and Goldman Sachs' strategy to meet consumers through proprietary channels and through the ecosystems of leading companies with embedded technology.

**Transaction Details**

As part of the agreement, GreenSky stockholders will receive 0.03 shares of common stock of Goldman Sachs for each share of GreenSky Class A common stock. Based on the closing share price of Goldman Sachs common stock as of September 14, 2021, this represents a per share price for GreenSky Class A common stock of $12.11 and an implied transaction value of approximately $2.24 billion. In connection with the transaction, GreenSky's tax receivable agreement was amended to provide that no payments will be made in respect of or following the transaction; these payments would have had an approximate value of $446 million or $2.41 per share.

The Boards of Directors of Goldman Sachs and GreenSky have approved the transaction. The Board of Directors of GreenSky, acting upon the unanimous recommendation of a special committee composed of independent directors of the Board, recommends that GreenSky stockholders approve the transaction and adopt the merger agreement. The transaction, which is anticipated to close in the fourth quarter of 2021 or first quarter of 2022, is subject to approval by GreenSky stockholders, the receipt of required regulatory approvals, and satisfaction of other customary closing conditions.

Goldman Sachs & Co. LLC is serving as financial advisor and Sullivan & Cromwell LLP is serving as legal counsel to Goldman Sachs.

J.P. Morgan Securities LLC and Financial Technology Partners LP are serving as financial advisors and Cravath, Swaine & Moore LLP and Troutman Pepper Hamilton Sanders LLP are serving as legal counsel to GreenSky.

Piper Sandler & Co. is serving as financial advisor and Wilson Sonsini Goodrich & Rosati P.C. is serving as legal counsel to the special committee of the Board of Directors of GreenSky.

**The Proxy Statement Contains Material Misstatements or Omissions**

18. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to GreenSky's stockholders. The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

19. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information

concerning (a) the financial projections for the Company and GS Group; (b) the valuation analyses underlying the fairness opinion provided by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), and the Special Committee of the Board's (Special Committee") financial advisor Piper Sandler & Co. ("Piper Sandler," and collectively with J.P. Morgan the "Financial Advisors"); and (c) J.P. Morgan's potential conflicts of interest.

***Material Omissions Concerning the Company's Projections and the Financial Analyses Relied on by the Board***

20. The Proxy Statement omits material information regarding the Company's financial projections, including the line items underlying GreenSky management's forecasts for: (a) Gross Profit; (b) Net Income; (c) Adjusted EBITDA and (d) Unlevered Free Cash Flow.

21. The Proxy Statement similarly fails to disclose the mean research analyst net income, EPS and dividends per share estimates for GS Group for the years ending December 31, 2021, through December 31, 2023 ("Consensus GS Group Estimates") utilized by Piper Sandler in connection with its *Net Present Value of the GS Group*. *See* Proxy Statement at 90.

22. The omission of this information renders the statements in the ""Certain Unaudited Financial Information" and "Opinion of Piper Sandler, GreenSky Special Committee's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Financial Advisors' Respective Analyses***

23. The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by the Financial Advisors.

24. The Proxy Statement describes the Financial Advisor's respective fairness opinions and the various underlying valuation analyses. That description, however, omits key inputs and assumptions forming the bases of these analyses. The absence of this material information precludes the Company's public stockholders from fully understanding the work of the Financial Advisors. \

6

As a result, GreenSky stockholders cannot assess what significance to place on the Financial Advisor's respective fairness opinions in determining whether to approve the Proposed Transaction or otherwise act.

25. With respect to J.P. Morgan's *Public Trading Multiples Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies analyzed by J.P. Morgan.

26. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) the Company's terminal values; and (b) the inputs and assumptions underlying the range of discount rates utilized in connection with the analysis.

27. With respect to Piper Sandler's *Comparable Company Analyses* and *Analysis of Precedent Transactions*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies analyzed by Piper Sandler.

28. With respect to Piper Sandler's *Net Present Value Analyses*, the Proxy Statement fails to disclose: (a) the Consensus GS Group Estimates utilized in the analysis of the GS Group; (b) the terminal values resulting from the analyses; and (iii) the inputs and assumptions underlying the range of discount rates utilized for the analysis that estimated the net present value of a share of GreenSky class A common stock and 7.5% to 10.5%, utilized for the analysis that estimated the net present value per share of GS Group common stock.

29. The omission of this information renders the statements in the "Certain Unaudited Financial Information," "Opinion of J.P. Morgan, GreenSky's Financial Advisor" and "Opinion of Piper Sandler, GreenSky Special Committee's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

30. Indeed, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range

of ultimate values generated by those analyses must also be fairly disclosed.

*Material Omissions Concerning J.P. Morgan's Potential Conflicts of Interest*

31. The Proxy Statement fails to disclose material information concerning J.P. Morgan's potential conflicts of interest, including the specific services that J.P. Morgan provided to the GS Group in the two years preceding delivery of its fairness opinion.

32. The omission of this material information renders the statements in the "Background of the Transactions" and "Opinion of J.P. Morgan, GreenSky's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

33. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other GreenSky stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

34. Plaintiff repeats all previous allegations as if set forth in full.

35. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

36. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy

Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Financial Advisors. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

37. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

38. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

39. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

40. Plaintiff repeats all previous allegations as if set forth in full.

41. The Individual Defendants acted as controlling persons of GreenSky within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of GreenSky, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, GreenSky's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including

injunctive relief, in his favor on behalf of GreenSky, and against defendants, as follows:

  A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to GreenSky stockholders;

  B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

  C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 23, 2021      **LONG LAW, LLC**

            By */s/ Brian D. Long*
               Brian D. Long (#4347)
               3828 Kennett Pike, Suite 208
               Wilmington, DE 19807
               Telephone: (302) 729-9100
               Email: BDLong@longlawde.com

               *Attorneys for Plaintiff*